**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RONALD R. WHYTE,

          Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

Case No.  CV 16-06158-RAO

**MEMORANDUM OPINION AND
ORDER**

## I.    **INTRODUCTION**

Plaintiff Ronald R. Whyte ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.    **PROCEEDINGS BELOW**

On August 21, 2014, Plaintiff filed a claim for a period of disability, DIB, and SSI alleging disability beginning June 1, 2004.  (Administrative Record ("AR") 88, 98, 108, 204, 210.)  His application was denied initially on November 19, 2014, and upon reconsideration on March 16, 2015.  (AR 139, 144, 153, 159.)  On May

12, 2015, Plaintiff filed a written request for hearing, and a hearing was held on October 16, 2015. (AR 34, 165.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert ("VE"). (AR 36-87.) On February 4, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since June 1, 2004. (AR 28-29.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on August 17, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2004, the alleged onset date ("AOD"). (AR 20.) At **step two**, the ALJ found that Plaintiff's delusional disorder, persecutory type, and history of methamphetamine abuse are severe impairments. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 21.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine and repetitive tasks, but not at a production rate pace (no assembly work); no more than occasional contact with coworkers and supervisors; and no interaction with the general public.

(AR 22.)

///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform past relevant work as a telephone solicitor. (AR 27.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of decision. (AR 28.)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to terminate benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at

3

882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.  DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly assessed Plaintiff's medically determinable impairments; (2) whether the ALJ properly discounted Plaintiff's symptom testimony; and (3) whether the ALJ properly determined that Plaintiff could perform a significant number of jobs.  (Joint Stipulation ("JS") 4.)  Plaintiff contends that the ALJ failed to properly consider Plaintiff's impairments, failed to properly consider Plaintiff's symptoms, and failed to include all of Plaintiff's impairments in the hypothetical posed to the VE.  (*See* JS 4-10, 18-19, 29-30.)  The Commissioner disagrees.  (*See* JS 11-17, 20-25, 31-32.)

### A.    The ALJ Properly Assessed Plaintiff's Medically Determinable Impairments

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairment does not meet or equal a listed impairment and erred in finding that Plaintiff does not have a physical impairment.  (*See* JS 4-5, 8.)  The Commissioner argues that Plaintiff failed to carry his burden of establishing the severity of his impairments.  (*See* JS 11-13, 16.)

#### 1.    The ALJ Properly Considered The Medical Opinion Evidence

The ALJ determined the severity of Plaintiff's impairments based, in part, on physicians' medical opinions and conclusions.  (AR 20.)

///

4

### a. Applicable Legal Standards

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. However, an ALJ need not accept a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)). When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle*, 533 F.3d at 1164. A non-examining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record and is consistent with it. *Morgan*, 169 F.3d at 600. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### b. Discussion

John Sedgh, M.D., completed an internal medicine consultative examination of Plaintiff in October 2014. (AR 333-38.) Plaintiff's primary complaints were a tumor in his left ear, partial amputation of his left ear, and hepatitis C. (AR 333.)

Plaintiff reported that he had been diagnosed with basal cell carcinoma, and he complained of decreased hearing on his left side. (*Id.*) Upon examination, Dr. Sedgh observed that Plaintiff has 60 percent of the left auricle amputated and decreased hearing in the left ear, but Plaintiff did not wear a hearing aid. (AR 335, 337.) Dr. Sedgh opined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, stand and walk for 6 hours of an 8-hour workday, sit for 6 hours of an 8-hour workday, frequently perform postural activities, and manipulate and reach without limitation. (AR 338.) The ALJ noted that Dr. Sedgh's examination did not reveal a basis for any of these functional restrictions. (AR 25-26.) Accordingly, the ALJ gave no weight to Dr. Sedgh's concluding opinion regarding Plaintiff's capacity to work, but the ALJ considered the lack of findings for the purposes of determining the severity and effects of Plaintiff's alleged limitations. (AR 26.) Because Dr. Sedgh's opinion regarding functional limitations was not consistent with his own observations, the ALJ properly rejected it. *Valentine v. Comm. Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (ALJ's rejection of treating psychologist's opinion because it was contradicted by doctor's own treatment reports was specific and legitimate reason supported by substantial evidence).

Psychiatrist Raymond Yee, M.D., completed a psychiatric consultative examination of Plaintiff in October 2014. (AR 341-47.) Plaintiff reported to Dr. Yee that he has depression and was diagnosed with a delusional disorder. (AR 342.) Plaintiff explained that he was treated at Patton State Hospital for about ten months, seven of which were spent in the inpatient psychiatric facility. (AR 344.) After being released from prison, Plaintiff has been going to the Parole Outpatient Clinic. (*Id.*) Plaintiff reported passing Phase 1 of his requirement of attending classes, and in Phase 2, he gets to enroll in school. (*Id.*) Plaintiff expressed that he would like to be a drug and alcohol counselor, obtain higher education, and try to get a job one day. (*Id.*) Dr. Yee observed that Plaintiff had good grooming and

hygiene, good eye contact, and no abnormal mannerisms or tics. (AR 344-45.) Dr. Yee also observed that Plaintiff was polite, cooperative, and friendly, and he had productive and coherent speech with appropriate mood and affect. (AR 345.) Dr. Yee found that Plaintiff was oriented and had intact memory. (*Id.*) Plaintiff could correctly calculate, spell, and think abstractly. (AR 345-46.) Dr. Yee diagnosed Plaintiff with history of delusional disorder, persecutory type, and history of amphetamine abuse, with a Global Assessment of Functioning score of 55. (AR 346.) Dr. Yee stated that Plaintiff "appears to be psychiatrically stable," but found that his prognosis was "fair to guarded." (*Id.*) Dr. Yee opined that Plaintiff could perform simple and repetitive tasks, perform detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis without special supervision, maintain regular attendance, complete a normal workday and workweek without interruption from a psychiatric condition, and adequately deal with the usual stressors of competitive employment. (AR 347.) The ALJ gave great weight to Dr. Yee's opinion, "which factors the claimant's psychiatric history and current functioning." (AR 26.) However, the ALJ found that Dr. Yee's prognosis within the "guarded" realm of "fair to guarded" was entitled to no weight because it was inconsistent with Dr. Yee's assessment of no mental functional limitations, his belief that Plaintiff was psychiatrically stable, and Plaintiff's statements about goals and objectives for work and school. (*Id.*) The ALJ properly rejected this portion of Dr. Yee's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that a contradiction between a physician's opinion and his other recorded observations is a clear and convincing reason to discount that opinion).

State agency physician E. Wong, M.D., reviewed Plaintiff's records and concluded that Plaintiff does not have a severe physical impairment. (AR 115.) State agency physician G. Ikawa, M.D., opined that Plaintiff was mildly restricted in activities of daily living, moderately impaired in maintaining social functioning,

and mildly impaired in maintaining concentration, persistence, or pace. (AR 117, 119-20.) The ALJ found that these opinions were consistent with both objective findings and Plaintiff's statements regarding his ability to perform daily activities. (AR 25.) The ALJ was therefore permitted to assign great weight to these non-examining opinions. *See Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to non-examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities").

In sum, the Court finds that the ALJ properly assessed and weighed the medical opinion evidence.

### 2. The ALJ Did Not Err In Finding That Plaintiff's Mental Impairment Did Not Meet Or Equal A Listed Impairment

Plaintiff contends that the ALJ erred in finding that Plaintiff's mental impairment did not meet or equal a listed impairment. (*See* JS 4-7.) The Commissioner contends that Plaintiff failed to meet his burden of establishing that he had a listed impairment. (*See* JS 11-13.)

### a. Applicable Legal Standards

At step three, an ALJ must determine whether a claimant has an impairment or combination of impairments that meet or medically equal the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR § 404.1594(f)(2). Listed impairments are "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990). To show that a claimant's impairment meets a listing, the claimant must meet all of the specified medical criteria for that listing. *Id.* at 530. An ALJ "must evaluate the relevant evidence

before concluding that a claimant's impairments do not meet or equal a listed impairment," *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), but it is not necessary to "state why a claimant failed to satisfy every different section of the listing of impairments," *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

### b. Discussion

The ALJ found that Plaintiff's mental impairment did not meet or medically equal the severity of Listing 12.04. (AR 21.) To meet this listing, a claimant must satisfy the requirements of both paragraphs A and B, or he must satisfy the requirements of paragraph C. *See* 20 CFR § Pt. 404, Subpt. P, App. 1 (12.04 Affective Disorders).

In finding that Plaintiff's impairment did not meet or equal Listing 12.04, the ALJ considered whether the "paragraph B" criteria were satisfied. (AR 21.) Paragraph B requires that the medically documented depressive syndrome, manic syndrome, or bipolar syndrome result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 CFR § Pt. 404, Subpt. P, App. 1 (12.04 Affective Disorders). The ALJ determined that Plaintiff had mild restriction of activities of daily living, noting his ability to care for his own needs, clean, do laundry, and prepare meals. (AR 21.) The ALJ also found that Plaintiff had only mild difficulties in social functioning, noting that he attends AA meetings, goes to the Gay and Lesbian Center for support and resources, has lived with roommates, gets money from friends and relatives, and takes public transportation. (*Id.*) The ALJ found moderate difficulties with concentration, persistence, or pace, noting that Plaintiff enjoys reading, playing

volleyball, and playing table cards.  (*Id.*)  Finally, the ALJ observed that Plaintiff has experienced no episodes of decompensation of extended duration.  (*Id.*)  The ALJ concluded that the "paragraph B" criteria are not satisfied because Plaintiff's mental impairment does not cause at least two "marked" limitations or one "marked" limitation with "repeated" episodes of decompensation.  (*Id.*)

The ALJ then considered the "paragraph C" criteria.  Paragraph C requires a medically documented history of at least two years of a chronic affective disorder that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and at least one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR § Pt. 404, Subpt. P, App. 1 (12.04 Affective Disorders).  The ALJ found that the evidence fails to meet the criteria.  (AR 21.)

Plaintiff contends that the ALJ erred in failing to consider Listing 12.03 for schizophrenia as requested by counsel (AR 43), and he argues that the evidence shows that he meets the criteria of parts A, B, and C of that listing.   (JS 4.) Although Plaintiff was diagnosed with schizophrenia (*see* AR 354-55), "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Plaintiff must also demonstrate that his impairment is as severe as required under the findings for that impairment.  *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990) (citing 20 CFR § 404.1525(d)).

At the time of the hearing and the ALJ's decision, Listing 12.03 and Listing 12.04 had identical "paragraph B" and "paragraph C" criteria. *See* 20 CFR § Pt. 404, Subpt. P, App. 1 (effective Aug. 12, 2015 to May 23, 2016). As discussed above, the ALJ found that the "paragraph B" and "paragraph C" criteria were not satisfied. (*See* AR 21.) Although the ALJ did not expressly consider Listing 12.03 for schizophrenia, Plaintiff has not met his burden of proving that he meets all criteria of the listing, including the "paragraph B" or "paragraph C" criteria.

Accordingly, the ALJ did not err in determining that Plaintiff's impairments did not meet or medically equal a listed impairment. *See Perez v. Astrue*, 831 F. Supp. 2d 1168, 1175-76 (C.D. Cal. 2011) (finding no error when an ALJ failed to address the listings expressly argued by claimant's counsel, but fully discussed the record and found that the claimant did not provide evidence that her impairments met or equaled any listing); see also *See Gonzalez*, 914 F.2d at 1201 (stating that it is unnecessary for the ALJ to explain why a claimant failed to satisfy every section of the listing of impairments, and a four-page "evaluation of the evidence" was an adequate statement of the foundation for the ALJ's conclusions).

### 3. The ALJ Did Not Err In Finding No Physical Impairment

Plaintiff contends that the ALJ erred in not finding a severe impairment related to Plaintiff's problems with his ear. (*See* JS 8.) The Commissioner contends that Plaintiff failed to provide any evidence of limitations attributed to his ear impairments. (JS 15-16.)

At step two, the ALJ must determine whether a claimant has a severe medically determinable impairment. *See* 20 CFR §§ 404.1520(c), 416.920(c). The existence of a severe impairment is satisfied when the evidence shows that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. 20 CFR § 404.1521(a); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed

judgment as to its limiting effects on a claimant's ability to do basic work activities. SSR 85–28, 1985 WL 56856, at *4 (Jan. 1, 1985). An impairment or combination thereof is not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen,* 80 F.3d at 1290.

The ALJ acknowledged Plaintiff's testimony about his skin cancer and loss of hearing in his left ear, but found that there was "minimal evidence of treatment or adverse effects" of these conditions. (AR 21.) The ALJ noted that there was no record of follow-up for the basal cell carcinoma and no record of audiological testing. (*Id.*) Furthermore, the ALJ observed that Plaintiff did not allege these conditions in his disability application. (*Id.*)

The ALJ considered Plaintiff's October 2014 internal medicine consultative examination, which documented Plaintiff's partial amputation of his left ear and decreased hearing on the left side. (AR 25.) The examining physician noted that Plaintiff did not use a hearing aid, and he did not assess any functional limitations related to Plaintiff's ear or hearing. (AR 335, 337-38.) As discussed above, the ALJ also properly assessed and gave great weight to the state agency opinion that Plaintiff did not have a severe physical impairment. (AR 25; *see* AR 115.) The ALJ therefore did not find sufficient clinical evidence to support the severity of Plaintiff's ear impairments. (AR 21.)

While the record shows that Plaintiff had skin cancer and loss of hearing in his left hear, a mere diagnosis of an impairment—or even treatment for it—is insufficient to establish severity at step two, especially when, like the instant case, the *objective* medical evidence in the record fails to show any *work-related limitations* connected to the impairment. *See Harvey v. Colvin*, 2013 WL 3899282, at *5 (C.D. Cal. July 29, 2013) (citing *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993)).

Plaintiff argues that the ALJ erred in not reviewing the entire record "to understand the nature of the impairment, its ongoing nature and [Plaintiff's] symptomatology." (JS 8.) But as the Commissioner notes (JS 16), Plaintiff provided no evidence regarding any limitations arising from these impairments. At the hearing, the ALJ provided Plaintiff's attorney with 30 days to submit additional relevant medical evidence, but as of the date of the ALJ's decision, no records had been received. (AR 18, 40, 86; *see* JS 8.)

Based on the record as a whole, the ALJ did not err in finding that Plaintiff did not have a severe physical impairment.

**B.** **The ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff contends that the ALJ incorrectly impugned his testimony. (JS 19.) The Commissioner contends that the ALJ set forth valid reasons, supported by substantial evidence, for discounting Plaintiff's credibility. (JS 24.)

**1.** **Plaintiff's Testimony**

Plaintiff testified that he completed tenth grade and received a GED at the beginning of eleventh grade. (AR 48.) Plaintiff stated that he was currently living at a residence hotel, which he paid for with money "scrape[d] together" from friends and relatives. (AR 44-45.) Plaintiff collects general relief and food stamps, and his investment income has run out. (AR 45.) Plaintiff stated that the attorney who runs his investment was part of a conspiracy to murder him. (AR 46.) Plaintiff agreed with the ALJ's statement that mental health professionals think that he has delusional thoughts, and Plaintiff stated that he still holds those types of beliefs. (*Id.*)

Plaintiff explained that he is on parole and is required to see a psychiatrist once a month. (AR 47.) He stated that he does not see the psychiatrist much and instead sees a clinician. (AR 49-50.) Plaintiff testified that he sought treatment elsewhere because the clinician reports through his parole agent, but as long as he is

receiving services from the Parole Outpatient Clinic, he is unable to get services elsewhere unless he pays for them. (AR 49.) Plaintiff stated that he has a "pretty good relationship" with his therapist, and although he was previously worried about saying too much, he is more comfortable and "a little more open with her now." (AR 49-50.) Plaintiff testified that he has issues with rage and frustration, and he tries to cope with "thoughts that just sort of intrude." (AR 63.)

Plaintiff also sees another doctor via telecom who prescribes medications. (AR 50-51.) Plaintiff takes trazodone and mirtazapine. (AR 51.) Plaintiff testified that he previously took Buspar, Remeron, Abilify, and Seroquel, but he is unable to use them due to side effects such as passing out. (AR 52.) He stopped taking his psychiatric medications because they "don't make [him] feel very well." (*Id.*; *see* AR 54.) Plaintiff asked to start his medications again in September 2014. (AR 53.) By March 2015, Plaintiff stopped taking his psychiatric medications, and Plaintiff testified that he "would prefer not to take them at all, actually." (AR 54.) Plaintiff explained that at that time, he was taking his medications mostly to help him sleep. (AR 55.)

Plaintiff explained that when he was in prison, he "felt safe most of the time" and "didn't have the same stresses" that he currently has. (AR 54.) Plaintiff testified that he would always say that he was stable in prison, even if he was not as stable as he wanted to be. (AR 75.) Plaintiff then stated that he "really did feel stable" in prison because he did not come in contact with people as much and played volleyball all day. (*Id.*)

Plaintiff has not worked since he was released from prison, and he stated that he is "basically unemployable." (AR 48.) Plaintiff explained that he would "like to work," but he does not know if he is able to. (AR 49.) Plaintiff stated that he has tried to work and has submitted applications to "a few places," but he has to discuss his conviction. (*Id.*)

///

14

Plaintiff stated that his ear bleeds "practically every day," and he has to clean it several times a day. (AR 61-62.) He does not know what prompts the bleeding, and he often does not notice it. (AR 73-74.) He testified, "I don't feel physically disabled. Aside from the bleeding, I feel pretty good, actually." (AR 62.)

Plaintiff testified that he attended AA meetings for a while because he was addicted to methamphetamines. (AR 55.) Plaintiff stated that he has not used drugs in the past nine years, since before he was incarcerated. (AR 55-56.)

Plaintiff stated that he had volunteered on Saturdays, but he no longer can do so as often because it is now farther from him. (AR 57.) Plaintiff would like to continue volunteering, but it is difficult for him to get there. (*Id.*)

Plaintiff began working as a window washer in junior high school and became a professional in 1985. (*Id.*) Plaintiff explained that he did that work until 1999, when he had to sell his home and renovate it. (AR 58.) Plaintiff decided that he would rather renovate real estate, but he "never really made much money" in real estate. (*Id.*) Plaintiff was also a telemarketer for about a month, but he "sold absolutely nothing." (AR 59.) Plaintiff stated that while he was in prison, he worked in the kitchen for about eight months. (AR 61.) Since Plaintiff was released from prison, he made fifty dollars washing a store's windows twice before the store went out of business. (*Id.*) Plaintiff believes that he is "too old" to make a living washing windows now. (AR 73.)

Plaintiff stated that he visits with friends often, and they buy food that Plaintiff cooks for them. (AR 64.) Plaintiff also goes to the library and arranged meetings with a counselor regarding interviewing and networking. (*Id.*) Plaintiff explained that his "very violent" thoughts intruded into his conversation with the counselor, which he did not understand. (AR 64-65.)

Plaintiff testified that he has suffered from various levels of depression since he learned that his mother was conspiring to kill him. (AR 65.) Plaintiff explained that he takes certain precautions like barricading his door, changing locations, not

answering his phone, and taking different routes to places.  (AR 65-66.)  Plaintiff stated that he does not feel like he is persecuted, and he does not agree with his diagnosis of delusions.  (AR 67.)  Plaintiff also stated that he is told that his belief that he is not delusional is part of the delusion.  (*Id.*)  Plaintiff testified that in his mind, "there was a conspiracy to murder [him], and [he] narrowly escaped by killing one of the participants."  (*Id.*)

Plaintiff explained that there were times when he was very paranoid and, although "it's been proven that people were following [him]," he is sure that there were also times when he incorrectly thought that people were following him.  (AR 68.)  Plaintiff denied visual hallucinations, but he stated that he had auditory hallucinations several years ago.  (*Id.*)

Plaintiff testified that he cannot work due to fear.  (AR 69.)  When he is with other people, his thoughts regularly intrude on him and he has to remove himself.  (*Id.*)  Plaintiff explained that his thoughts also intrude when he is preparing a meal and holding knives.  (*Id.*)  Plaintiff stated that when he committed his crime, it was not spontaneous and he had a reason for the violence.  (AR 69-70.)  Plaintiff explained that now he is not angry, but he still has those thoughts.  (AR 70.)  Plaintiff stated that he will "explode in rage" if he struggles to operate his phone, and he has broken a couple of televisions because he was unable to get the remote to work.  (*Id.*)  Plaintiff explained that he never feels that rage with people, only with objects.  (AR 70-71.)  Plaintiff testified that this thinking disconnects him from whatever he is doing, and it happens only when he has contact with people.  (AR 72.)  Plaintiff stated that he did not develop these thoughts until several months after he got out of prison.  (AR 76.)  He does not understand why his thoughts are directed at his friends or strangers who have no ill will towards him.  (*Id.*)

///

///

## 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

## 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 23.) The ALJ noted that the record contains "ample evidence" of credibility issues "suggesting the claimant has never attempted to work outside of his prison term and his views of Social Security Disability as a mere source of financial gain." (AR 23.) Specifically, the ALJ relied on the following reasons: (1) lack of objective medical evidence to support the alleged severity of symptoms; (2) failure to seek treatment; (3) inconsistent statements; and (4) Plaintiff's statements about his

investment savings.[2]  (AR 23, 26-27.)  No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Lack of Supporting Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination.  *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 CFR § 404.1529(c)(2)).

The ALJ found that the medical record is "minimal" and does not provide sufficient objective support for Plaintiff's allegations of mental instability and physical problems.  (AR 23.)

In October 2009, Plaintiff was committed to the California Department of Mental Health and admitted to Patton State Hospital after being found incompetent to stand trial for murder.  (AR 289.)  Plaintiff did not report any complaints and stated that his admission was "really all just a misunderstanding" due to a problem with his attorney.  (*Id.*)  He had no psychiatric history except for a 2006 admission to a facility for substance abuse.  (*Id.*)  Plaintiff had delusions of persecution and believed that his lawyer was conniving with the judge.  (AR 289-90.)  Plaintiff was described as being linear and goal-directed with a good mood, euthymic affect, normal speech, no abnormal motor activities, intact memory, and fair judgment. (AR 289.)  He was alert, oriented, and attentive, but his insight was impaired.  (*Id.*) Physically, it was noted that Plaintiff had a left ear amputation for carcinoma of the skin, which caused difficulty with his hearing.  (AR 289-90.)  Plaintiff also had hepatitis C with a high viral load.  (*Id.*)  Plaintiff was treated with Seroquel, and he

---

[2] Plaintiff contends that the ALJ also improperly considered Plaintiff's activities while in prison.  (JS 7.)  The ALJ did not raise Plaintiff's activities as a reason to discount his testimony.  Instead, the ALJ considered Plaintiff's activities such as volleyball during his assessment of whether Plaintiff's impairment satisfied the "paragraph B" criteria for a listed impairment.  (AR 21.)

was compliant with treatment. (AR 290.) Plaintiff was described as friendly and able to interact with peers and staff. (*Id.*) He read books, magazines, and newspapers, and he also did puzzles, played table cards, and played volleyball. (*Id.*) No medication side effects were noted, but his symptoms did not diminish. (*Id.*) Upon discharge, Plaintiff acknowledged the need to "separate [his] delusions from reality" and denied hallucinations. (*Id.*) His mood was stable, affect was appropriate, and insight and judgment were improved. (*Id.*)

Treatment notes from December 2010 documented Plaintiff's restricted affect, depressed mood, poor sleep, poor insight and judgment, and preoccupation with paranoid thoughts. (AR 305, 307.) Plaintiff heard voices that told him to kill people. (AR 305.) He was diagnosed with psychotic disorder and polysubstance dependence, with a GAF score of 54. (AR 309.)

At an April 2013 routine appointment, Plaintiff was oriented and had normal speech, cooperative behavior, stable mood, slightly depressed affect, linear and goal-directed thoughts, normal thought content, good judgment, and good insight. (AR 317.) Plaintiff denied a history of hallucinations and did not appear to be responding to internal stimuli. (*Id.*) Plaintiff was observed to have adequate coping skills to manage his current stress. (*Id.*) He "appear[ed] stable with psychotropic medication" and was motivated for mental health sessions. (*Id.*) Plaintiff was assigned a GAF score of 68 and was diagnosed with provisional delusional disorder, depressive disorder NOS, and amphetamine abuse. (*Id.*)

In July 2013, Plaintiff reported, "I'm stable." (AR 316.) At a September 2013 follow-up appointment, Plaintiff again "appear[ed] stable" with his medications. (AR 315.) He still believed that there was a conspiracy to kill him, "but there is much less of a threat now." (*Id.*) Plaintiff had "ample coping strategies" and "positive plans for parole next year." (*Id.*) It was also noted that Plaintiff's delusions had a decreased impact on his functioning and behaviors. (*Id.*)

///

In December 2013, Plaintiff reported that he had not taken medication for his anxiety. (AR 296.) He denied auditory or visual hallucinations, but he reported a lack of motivation, intermittent periods of low mood, persecutory and paranoid delusions, and defensiveness with peers. (*Id.*) He was cooperative and calm, made good eye contact, and spoke with a normal rate and tone. (*Id.*) Plaintiff had euthymic mood, congruent affect, normal thought process, normal attention and concentration, and fair insight and judgment. (*Id.*)

Plaintiff reported that he was "doing well" at a routine appointment in March 2014. (AR 314.) He stopped his medications about six weeks prior because he was not suffering from depression and had not been depressed "in the last several years." (*Id.*) Plaintiff reportedly felt better because the medication had made him drowsy and less responsive. (*Id.*) Plaintiff was alert, oriented, well-groomed, and cooperative. (*Id.*) His mood was euthymic and his speech was clear, organized, and coherent with normal rate and tone. (*Id.*) Plaintiff had good insight and judgment, and he was assessed as "stable," active, and programming without incident. (*Id.*)

In June 2014, Plaintiff reported his plans for after his parole and expressed interest in the Ticket to Work program for vocational training. (AR 313.) He acknowledged that his symptoms of depression and anxiety were not overwhelming. (*Id.*) Plaintiff also reported no hallucinations in the past three years. (*Id.*) He was calm, cooperative, conversant, engaged, appropriate and open, talkative, and humorous. (*Id.*) Plaintiff had a bright affect, congruent mood, and coherent and spontaneous speech. (*Id.*) Plaintiff displayed no evidence of perceptual disturbance, delusional statements, or paranoia. (*Id.*) His insight and judgment were good with intact impulse control. (*Id.*) The clinician noted that Plaintiff "seems to be able to function" with minimal symptoms. (*Id.*)

///

///

Plaintiff visited the parole clinic in August 2014. (AR 331.) He denied hallucinations and stated that he was not interested in psychotropic medications at that time. (*Id.*)

In October 2014, Plaintiff underwent an internal medicine consultative examination. (AR 333-38.) He complained of a tumor in his left ear, partial amputation of his left ear, and hepatitis C. (AR 333.) The examining physician noted Plaintiff's decreased hearing on the left side, but observed that Plaintiff did not wear a hearing aid. (AR 335, 337.) The same month, Plaintiff also underwent a psychiatric consultative examination. (AR 341-47.) Plaintiff was polite, cooperative, and friendly. (AR 345.) The examining psychiatrist observed good grooming, good hygiene, good eye contact, productive and coherent speech, appropriate mood and affect, and no abnormal mannerisms or tics. (AR 344-45.) He assigned Plaintiff a GAF score of 55 and diagnosed Plaintiff with a history of delusional disorder, persecutory type, and a history of amphetamine abuse. (AR 346.) The psychiatrist determined that Plaintiff appeared to be "psychiatrically stable." (AR 347.)

During an October 2014 medication management appointment, Plaintiff claimed that he wanted to stop his medications for reasons that his doctor found "not convincing." (AR 354.) Plaintiff did not want to try different medication and "just want[ed] to stop them." (*Id.*)

In December 2014, Plaintiff reported having a good Thanksgiving holiday at a church with his AA peers. (AR 353.) He regularly volunteered at a homeless breakfast and went to the Gay and Lesbian Center for resources, support, and legal counseling. (*Id.*) Plaintiff reported looking forward to receiving services to learn a career or trade. (*Id.*) His mood was euthymic with congruent affect, and he denied any hallucinations. (*Id.*) Plaintiff reportedly felt stable without his psychotropic medications. (*Id.*) His social worker observed that Plaintiff "appears to be adjusting well to parole and in the community." (*Id.*)

The ALJ thoroughly considered Plaintiff's medical records (AR 23-26) and found that they did not support Plaintiff's allegations of disabling mental instability and physical problems. *See Reddick*, 157 F.3d at 725; *see also Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations). Although Plaintiff's treatment records may be interpreted in more than one way, the evidence can rationally support the ALJ's determination. Accordingly, the Court must uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### b. Reason No. 2: Failure to Seek Treatment

When assessing a claimant's credibility, an ALJ may consider an unexplained or inadequately explained failure to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. If a claimant complains of disabling pain but fails to seek or follow prescribed treatment, "an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ noted that Plaintiff alleged disability beginning June 2004, but there were no medical records from that period. (AR 23.) The ALJ also observed that the record "lacks consistent treatment notes from [Plaintiff]'s incarceration," identifying treatment records from October 2009, December 2010, April 2013, July 2013, September 2013, December 2013, March 2014, and June 2014. (AR 23-24.)

The Ninth Circuit has criticized the practice of discrediting evidence based on a lack of mental health treatment "both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

22

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (internal quotation marks omitted) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Accordingly, the Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Inconsistent Statements

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his other statements, conduct, and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Plaintiff's "overbroad and inconsistent testimony suggested he believed he could work and would work if he had a job." (AR 27.) The ALJ noted that in June 2014, one month before Plaintiff's parole, he reported that he planned to enter a vocational training program and was "hoping to qualify for a job." (AR 24; *see* AR 313.) During an October 2014 psychiatric consultative examination, Plaintiff expressed that he would like to be a drug and alcohol counselor. (AR 25; *see* AR 344.) Plaintiff also stated that he wanted to obtain higher education and try to get a job. (*Id.*) In November and December 2014, Plaintiff was looking forward to receiving Department of Rehabilitation services to learn a career or trade. (AR 26; *see* AR 353-54.) The ALJ observed that Plaintiff testified that he was "unemployable" before stating that he does not know if he is able to work. (AR 27; *see* AR 48-49.) The ALJ also noted that Plaintiff confirmed that he had submitted job applications at several places. (AR 27; *see* AR 49.)

Although Plaintiff argues that his desire to work or go to school should not detract from his credibility (*see* JS 28), the ALJ was permitted to rely on the inconsistency between Plaintiff's statements and his allegations of being unable to work due to disability. *See Merritt v. Colvin*, 572 F. App'x 468, 470 (9th Cir. 2014) (affirming an ALJ's finding that a claimant's "interest in starting a new job is

not consistent with [the] marked limitations in the ability to tolerate work pressures" about which the claimant testified); *see also Fregoso v. Astrue*, 2012 WL 2195655, at *4 (C.D. Cal. June 14, 2012) ("[P]laintiff's testimony at the hearing that she had been looking for work was inconsistent with plaintiff's assertions that she suffers from disabling impairments which preclude her from working at all."), *aff'd* (9th Cir. Aug. 13, 2013); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("[The ALJ] is entitled to draw inferences logically flowing from the evidence.").

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### d. Reason No. 4: Plaintiff's Statements About His Investment Savings

The ALJ found that Plaintiff's "credibility was again called into question" by Plaintiff's November 2014 revelation of his "investment savings." (AR 26; *see* AR 354.) Plaintiff stated that he did not plan to access this money because he was receiving free housing, but the ALJ noted that Plaintiff was not eligible to receive General Relief because he continued to own property. (AR 26; *see* AR 354.) By March 2015, Plaintiff reported that he was receiving his investment funds to pay for living expenses. (AR 352.)

The ALJ does not explain how this undermines Plaintiff's credibility, thereby leaving the Court to speculate unacceptably about why the ALJ questioned Plaintiff's credibility on this basis. *See Ros v. Berryhill*, No. 2:15-CV-2389 DB, 2017 WL 896287, at *4 (E.D. Cal. Mar. 7, 2017) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)) ("The court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions."). The Commissioner argues that Plaintiff's statements concerning his resources and income are inconsistent, citing Plaintiff's social security application that represented that he had no resources or income and Plaintiff's testimony that he "scrape[s] together money

24

from friends and relatives." (JS 23-24.) But those were not reasons that the ALJ provided, and the Court may not consider grounds upon which the ALJ did not rely. *See Orn*, 495 F.3d at 630; *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### 4. Conclusion

Because the Court found that two of the ALJ's reasons for discounting Plaintiff's credibility are not clear and convincing, the Court must decide whether the ALJ's reliance on those reasons was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning the objective medical evidence and Plaintiff's inconsistent statements, the Court concludes the ALJ's credibility finding is legally valid and supported by substantial evidence.

### C. <u>The ALJ Properly Determined That Plaintiff Could Perform A Significant Number Of Jobs</u>

Plaintiff contends that the ALJ improperly assessed his RFC and erred in relying on the VE's answers to a hypothetical that excluded some of Plaintiff's limitations. (*See* JS 9, 29.) The Commissioner contends that both the RFC and the hypothetical that the ALJ posed to the VE are supported by substantial evidence.

25

(*See* JS 14-17, 31-32.)

**1. <u>The RFC Is Supported By Substantial Evidence</u>**

Plaintiff contends that the ALJ did not properly assess the record and thus the RFC is not supported by substantial evidence. (JS 9.) The Commissioner contends that the ALJ reasonably relied on the medical opinion evidence when determining Plaintiff's RFC. (JS 14-17.)

**a. Applicable Legal Standard**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217; *accord Morgan*, 169 F.3d at 599.

**b. Discussion**

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 22.)

The ALJ gave "great weight" to the opinions of the state agency medical consultants, finding that their opinions were consistent with objective findings and Plaintiff's statements about his ability to perform daily activities. (AR 25.) Dr. Wong found that Plaintiff did not have a severe physical impairment, and Dr. Ikawa opined that Plaintiff had mild to moderate non-exertional limitations and could perform simple, repetitive tasks. (*Id.*; *see* AR 115, 117, 119-20.) The ALJ again gave "great weight" to the psychiatric examining physician, who found that

Plaintiff was psychiatrically stable and did not require any functional restrictions. (AR 25-26; *see* 346-47.) The ALJ also considered the internal medicine examining physician's lack of findings in determining the severity and effects of Plaintiff's alleged impairments. (AR 26.) As previously discussed, the ALJ properly considered and weighed the opinion evidence (*see supra* § IV(A)(1)), and the ALJ was permitted to rely upon these opinions in assessing Plaintiff's RFC. *See Magallanes*, 881 F.2d at 752 ("[T]he reports of consultative physicians called in by the Secretary may serve as substantial evidence."); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (stating that the opinion of a non-treating, examining physician that is based on independent clinical findings "may itself be substantial evidence").

Consistent with the opinion evidence, the ALJ assessed that Plaintiff could perform simple, routine, and repetitive tasks, not at a production rate pace, with no more than occasional contact with coworkers and supervisors and no interaction with the general public. (AR 22.) The ALJ imposed no physical exertional limitations. (*Id.*)

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ did not properly assess the record with respect to his treating physician's opinion. (JS 9.) Plaintiff does not identify what opinion was improperly assessed. To the extent that Plaintiff identifies a diagnosis of schizophrenia that "received little consideration by the ALJ" and was not incorporated in the RFC assessment (JS 7), a "diagnosis alone is insufficient for finding a 'severe' impairment." *See Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014). Although the ALJ must consider limitations imposed by all impairments, including non-severe impairments, *see* SSR 96–8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996), Plaintiff does not identify any functional limitations that were suggested by the diagnosing psychiatrist yet ignored by the ALJ. Dr. Robert Barker described Plaintiff's statements and history before observing that Plaintiff

was casually and cleanly dressed with normal speech, euthymic mood, and appropriate affect. (AR 354-55.) Aside from his diagnosis of schizophrenia and his advisement that recurrences of Plaintiff's problems "are not likely to be due to problems in the external world," and would be best treated with medication, Dr. Barker provided no further opinion for the ALJ's consideration. (*See id.*)

In sum, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

## 2. The ALJ Properly Relied On The VE's Testimony To Find That Plaintiff Can Perform Other Work

Plaintiff argues that the ALJ's finding that Plaintiff could perform a significant number of jobs is not supported by substantial evidence and fails to consider Plaintiff's impairments. (JS 29.) The Commissioner contends that the ALJ properly relied on the VE's testimony because the ALJ posed a hypothetical to the VE that encompassed all of Plaintiff's limitations. (JS 31-32.)

### a. Applicable Legal Standard

At step five, it is the Commissioner's burden to establish that, considering the RFC, the claimant can perform other work. *Embrey*, 849 F.2d at 422. To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do, and (2) the availability of those jobs in the national economy. *Id.* at 1101. These hypotheticals must depict the claimant's disability in a manner that is "accurate, detailed, and supported by the medical record" and "set[s] out all of the claimant's impairments." *Id.* (citing *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987)). The VE's testimony "is valuable only to the extent

that it is supported by medical evidence." *Sample*, 694 F.2d at 644. "If a [VE]'s hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

### b. Discussion

At the hearing, the ALJ first asked the VE to consider a hypothetical individual with the same education and work background as Plaintiff, who could also perform the following: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; sit, stand, or walk for six hours in a work day; push and pull as much as he can lift and carry; and frequently stoop, kneel, crouch, and crawl. (AR 81-82.) The VE testified that such an individual could perform Plaintiff's past job as a telephone solicitor. (AR 82.) When the ALJ added the limitation of "simple, routine, and repetitive tasks with only occasional interaction with the public," the VE stated that Plaintiff's past job would not be available, but such an individual could perform the jobs of hand packager, laundry worker, or industrial cleaner. (AR 82-83.)

The ALJ then posed the following hypothetical to the VE:

> And I'm just going to—the same exertional levels, so just following up on the hypothetical I asked, but now, reducing the mental limitations to simple, routine, and repetitive tasks, but not at a production rate pace, so that, for example, no assembly line work. Just occasional interaction with supervisors and coworkers, and no interaction with the general public.

(AR 83.) The VE testified that a person with those limitations could not perform Plaintiff's past work. (*Id.*) The VE then indicated that a person with those restrictions could still do the jobs that the VE identified in response to the prior

hypothetical.[3]  (AR 83-84.)

Plaintiff contends that the hypotheticals were deficient because they failed to reflect the nature and scope of Plaintiff's limitations.  (JS 29.)  Plaintiff also notes that when his attorney posed a hypothetical that considered a claimant who would be off-task over twenty percent of the time, the VE stated that there would be no jobs available.  (*Id.*; *see* AR 84-85.)  However, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel."  *Magallanes*, 881 F.2d at 756 (citing *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986)).  When a claimant's counsel poses a hypothetical that is more restrictive than the ALJ's hypothetical, the ALJ is "free to accept or reject those restrictions" based on the ALJ's evaluation of the evidence.  *Martinez*, 807 F.2d at 774.  As discussed above, the ALJ's RFC determination—which omitted the additional limitations presented by Plaintiff's counsel—is supported by substantial evidence.  The ALJ posed a hypothetical containing limitations that were identical to the limitations found in Plaintiff's RFC.  Consequently, the limitations in the hypothetical are also supported by substantial evidence.

By posing a hypothetical with limitations supported by substantial evidence, the ALJ did not err in excluding additional restrictions.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (finding that, because the ALJ's RFC assessment was proper and complete, the ALJ's hypothetical based on the RFC was also proper and complete); *Sample*, 694 F.2d at 644 ("[T]he limitation of evidence contained in the hypothetical at issue would be objectionable only if the assumed facts could not be supported by the record."); *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that an ALJ did not err in failing to

---

[3] The VE stated, "The ultimate jobs I testified to in hypothetical number one would still fit."  (AR 84.)  Because the VE did not identify other jobs in response to the first hypothetical, and he instead testified that such an individual could perform Plaintiff's past work, the Court presumes that here the VE was referring to the second, not first, hypothetical.

include alleged impairments in a hypothetical when the claimant failed to present evidence to support those impairments). Accordingly, the ALJ properly relied on the VE's testimony to determine that Plaintiff was capable of performing other work. *See Bayliss*, 427 F.3d at 1217 (finding that an ALJ properly relied on a VE's testimony in response to a hypothetical that "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record"); *Sampson v. Astrue*, 441 F. App'x 545, 547 (9th Cir. 2011) ("Because the ALJ's hypothetical to the [VE] encompassed the RFC and the VE identified available jobs in the national and local economy, the ALJ's finding of no disability was supported by substantial evidence.").

## V.    **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  March 23, 2018

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

31